# CHARLESTON.

DUNFEE *et al. v.* CHILDS *et al.*

Submitted February 7, 1898—Decided May 6, 1898.

1. BILL OF REVIEW—*Leave of Court—Newly Discovered Evidence.*
   There need be no leave of court to file a bill of review based on error of law, but such leave is necessary when the bill of review is based on newly-discovered facts. (p. 157).

2. BILL OF REVIEW—*Motion for Reversal—Limitation.*
   Three years is the limitation for a bill of review, and five years for a motion to reverse a decree by default. (BRANNON. PRESIDENT, fixes two years for both.) (p. 157, 161).

3. ERROR—*Decree--Payment Under Contract.*
   It is error to decree payment of purchase money before the time fixed in the contract. (p 163).

4. CREDITOR'S BILL—*Parties—Order to Convene Liens.*
   Though a suit be brought by one judgment creditor only, to enforce the lien of his judgment, and though it does not make other judgment creditors parties, and though it be not in terms a suit for the benefit of the plaintiff and other judgment creditors, yet the court may make it a suit for all lienors by ordering an account of all liens to be taken, or on a reference to convene lienors any may prove their liens. Upon such order to convene liens it is a suit for the benefit of all presenting liens, though no mention of such liens be made in the bill. (p. 163).

5. NEW PARTIES--*Petition for Relief—Summons—Liens—Order to Convene Liens.*
   Petitions for relief in a cause filed by new parties must have process against parties to be affected thereby; but, if they seek to enforce liens, and an order to convene liens is made, the liens stated in the petition may be presented to a commissioner without such process on such petition. (p. 163).

6. JUDGMENT LIEN—*Fieri Facias—Equity Pleading.*
   A bill to enforce a judgment lien must state that a writ of *fieri*

*facias* has been returned "No property found," or that no execution issued within two years from the date of the judgment. This is not required as to judgments of date before the act of 13th March, 1891. (p. 163).

7. SALE OF REALTY—*Judgment—Rental.*
     Before a sale of land can be made to satisfy judgments, it must somehow appear in the cause that it will not, in five years, rent for enough to satisfy the liens decreed. (p 164).

8. SALE OF REALTY —*Purchaser's Rights —Decree of Sale—Reversal*
     The reversal of a decree under which land is sold will not affect the title of the purchaser, if he is not a party to the suit, or, though a party, has no interest in the debt or cause for which the land is sold; but, if he is a party with such interest in the decree, his title falls with such reversal. If a decree confirming a sale be reversed for error in it, the purchaser's title falls, whether he be a party or not. Where necessary parties having title are not before the court, the purchaser's title falls with reversal of decree of sale. (p. 164).

Appeal from Circuit Court, Tyler County.

Suit by H. Childs & Co. and others against John R. Dunfee and another to enforce a judgment. There was a decree for plaintiffs. Defendant's bill of review was dismissed, and they appeal.

*Reversed.*

DAVID D. JOHNSON, for appellants.

ROBERT McELDOWNEY and S. B. HALL, for appellees.

BRANNON, PRESIDENT:

This was a chancery suit in Tyler County by H. Childs & Co. against Taylor and Dunfee to enforce a judgment against the lands of Taylor and Dunfee. There were other lienors not made parties, but they filed petitions seeking the enforcement of their judgments, and were made co-plaintiffs by order of the court. There were a purchase-money lien and a deed of trust on the lands. There was a convention of lienors under an order of reference, and a decree of sale, and a sale under it, and a decree confirming that sale. These decrees were decrees by default as to Taylor and Dunfee. Then came a motion to reverse the decree of sale for certain errors, which motion was overruled. Then came a bill of review, which

was dismissed, and this is an appeal to review the action of the court in dismissing the bill of review.

No leave of court to file the bill of review was given. It is based on error of law. The Virginia practice and ours has been to apply in the first instance for leave to file a bill of review, whether it be error of law apparent in the decree or upon discovery of new matter; but the general chancery practice elsewhere, while requiring leave to file a bill of review for matter newly discovered since the decree, does not require such previous leave to file bills of review based on error in law. The matter has never been actually settled in this State, as JUDGE ENGLISH states correctly, in *Riggs* v. *Huffman*, 33 W. Va., 430, (10 S. E. 795); and I think that JUDGE ENGLISH was right in indicating the opinion in that case that no good reason exists why the English practice, which dispenses with such previous leave, should be changed, and therefore I hold that such previous leave is not required. It is true that section 5 chapter 133, Code 1891, does contain the clause, "A court or judge allowing a bill of review may award an injunction to the decree to be reviewed;" but the use of the word "allow" in that clause does not necessarily mean that previous leave must in all cases be had. The clause may receive a reasonable construction in saying that it applies where the party wants not merely a bill of review, but also an injunction to supersede the execution of the decree complained of. Besides, the court recognized the bill of review by acting upon it, thus dispensing with the necessity of previous leave to file it.

The bill of review was filed more than two years after the decree, but not more than three years. Was it barred? Until chapter 157, Acts 1882, the limitation of an appeal to the Court of Appeals was five years, and that of a bill of review three years; and, the legislature having reduced the limitation for an appeal to two years in 1882, leaving chapter 133, section 5, standing without repeal by express reference to it, it may be claimed that three years is still the limitation of a bill of review for error of law. A bill of review is a mode of reversing a final decree for two causes,—one, error of law apparent on the face of the decree; the other, for new-

ly-discovered matter. *Amiss v. McGinnis*, 12 W. Va., 371.
This bill rests on error of law, not newly-discovered mat-
ter. For error of law apparent in a decree you may have
either an appeal or bill of review. Now, if you ask an ap-
peal to the Supreme Court, and the decree is older than
two years, you are refused it; and yet, if the bill can be
maintained, you can go back to the circuit court, if the de-
cree be not over three years old, get a bill of review, and
reverse it. This cannot be. Surely, you cannot reverse
it for the same error in the circuit court which could not
reverse it in the Supreme Court. By the act of 1882, an
error, after two years, is cured; the decree stands forever
valid. If for an error which would be reversible on an ap-
peal taken in time, but cannot be reversed on appeal be-
cause barred, you can yet reverse on bill of review, see
where it would lead. After two years, but within three,
you ask an appeal to the Supreme Court, and it is refused
because barred. Then you get a bill of review,, and after
years it is dismissed by the circuit court. Then you get
an appeal from the decree dismissing the bill of review,
and the Supreme Court thinks there was error in the first
decree for which the circuit court ought to have reversed
it on bill of review, and reverses the first decree,—re-
verses it perhaps ten years after its date. Thus, under
this theory, is a decree reversed ten years after its date in
the very teeth of the act of 1882, plainly intending that no
decree shall be reversed for error after two years. This
cannot be. Why? Because the two acts conflict, and the
latter prevails. Though section 5, chapter 133, limiting
bills of review to three years, is not repealed by mention,
it is repealed by inevitable implication, under principles of
reason, and consistently with well-settled rules of inter-
pretation of statutes. The two sections squarely conflict.
One (the latter) says that an appeal shall not lie after two
years,—that is, an error in it cannot be redressed after
that time; the other gives three years. They both operate
on the same matter,—the erroneous decree. Reason says
one must give way, and that is the older one. Look at
authority. "Where two statutes on the same subject con-
flict, the latter shall have precedence." *Edgar v. Greer*,
74 Am. Dec., 316; *Towle v. Marrell*, 14 Am. Dec. 206, note,

p. 209. When a conflict is seen, the older provision ceases without a repealing clause in the later act. 23 Am. & Eng. Enc. Law, 479. How can we doubt that the legislature in 1882 designed one, and only one, limitation on all proceedings to reverse an erroneous decree? It is the error that is barred, not simply the process. Where, for a given error, there are two concurrent remedies, it was not intended to fix different limitations for them. From early in the century the legislation of Virginia and this State gave an appeal longer duration than a bill of review; but now, under the theory claimed, the latter has longer time. Why a difference? Why give the inferior court longer time? The legislature designed to fix two years as the limit upon an error in a decree or judgment. If it did, that displaces former limitation, and brings the bill of review under analogy to the appeal, as it was before it had a limit. *Shepherd* v. *Larue*, 6 Munf., 529, 531. The United States Supreme Court has said in *Daviess* v. *Fairborn*, 3 How., 636, that, "though a later act be not repugnant to the provisions of a former one, yet, if it is clearly intended to prescribe the only rule which should govern, it repeals the prior act." Approved by Moncure, J., *Fox* v. *Com.*, 16 Grat., 11. "A later statute, the evident intent of which is to furnish the exclusive rule governing a certain case, repeals by implication an earlier law on the same subject. If the co-existence of two sets of affirmative provisions would be destructive of the object for which the later set was passed, or if the same right would be made dependent on conflicting conditions (two remedies), the earlier set would be repealed by implication by the later." 23 Am. & Eng. Enc. Law, 484, cl. c. Apply this rule. The act of 1882 intended to give a man for whom a decree is rendered peace after two years; but, if you can disturb him by bill of review in three years, how can you harmonize the two provisions? They do not apply to different matters, but to one only,—the reversal of a decree for a given error. The error is the cause of action. They are irreconcilable. Both cannot stand together. Apply the last clause further. The redress against this one error would depend on whether you had recourse to an appeal or bill of review. This cannot be. By adopting the

rule I contend for, you further reason, and harmonize both sections and remedies, whereas the rejection of this rule leads to chaos and unreasonable results. I repeat, the act of 1882 acted on the error itself, not merely on the remedy of two concurrent ones you might choose. It intended repose after two years. Sutherland on Statutory Construction (section 138) says that repeals by implication are recognized as intended, just as well as express repeals, by the legislature, though not expressed; and "its intention to repeal is ascertained as the legislative intent is ascertained in other respects, when not expressly declared, —that is, by construction. The implied repeal results from some enactment the terms and necessary operation of which cannot be harmonized with the terms and effect of an earlier act. In such case the later act prevails as the last expression of the legislative will. Therefore the former law is constructively repealed, since it cannot be supposed that the lawmaking power intends to enact or continue in force laws which are contradictions." So said also Judge Moncure in *Fox* v. *Com.*, 16 Grat., 9. It will not do to say that the legislature has left the section limiting a bill of review untouched. It has not touched it in express words of reference to it, but it has in construction and reason, by saying the legislative intent was that all error should be barred of redress after two years, attack it in what guise or mode you say. Another view: In 1882 the legislature made a new limitation against relief against erroneous decrees, covering that subject entirely. That repealed the former rule in all respects, being intended as a substitute for it. *Herron* v. *Carson*, 26 W. Va., 62; 23 Am. & Eng. Enc. Law, 484; *Fox* v. *Com.*, 16 Grat., 1.

Another view: The act of 1882 (chapter 157) which says no appeal, etc., shall be taken after two years,—that is, no erroneous decree shall be reversed,—is a negative, prohibitory statute. It favors the argument of repeal by implication more than if affirmative. Affirmative acts are "generally cumulative; the other displaces existing rules." Suth. St. Const. §§ 202, 203. But I notice that the last section of the act of 1882 contains a repealing clause by the language, "All acts, and parts of acts coming within the purview of this act, and inconsistent therewith, are here-

by repealed." Sutherland on Statutory Construction (section 137) says: "Where a statute repeals all former laws within its purview, the intention is obvious, and is readily recognized, to sweep away all existing laws upon the subjects with which the repealing act deals. The purview is the enacting part of a statute, in contradistinction to the preamble; and a repeal of all acts within the purview of the repealing statute should be understood as including all acts or parts of acts in relation to all cases which are provided for by the repealing act, and no more." Now, does not the act of 1882 provide a limitation for the reversal of a decree,—the same matter to which the section as to a bill of review relates? The matter is within the purview of the act of 1882. Then, is the later act inconsistent with the older provision? Yes, because it provides a different limitation,—a shorter one. The two are conflicting. The legislature knew there might be acts, or parts, inconsistent; and, though it did not specify, yet it said it did not intend them to continue if inharmonious with the meaning, spirit, and purpose of the later act. My position, then, is that for error of law on the face of a decree the limit to a bill of review is two years, because an appeal for that error has been reduced to two years. A bill of review for new matter is different, perhaps, because that cannot be made the subject of an appeal, and is not touched by the act of 1882. A repeal by implication is only so far as the later act, in its operation, conflicts with the older. 23 Am. & Eng. Enc. Law, 479. It is absurd to say that for a given error there is no redress in the Court of Appeals, though within two years it would be effective there, and turn round and let the circuit court redress it. This ought not to be so, and is not so.

Another important question arises. More than two, but not five, years had elapsed before the motion to reverse the decree. Was that motion barred? What is said above as to a bill of review largely applies to the present question. This motion is a process acting on matter of error in the decree. It cannot be that the legislature intended to give five years for a motion to reverse by one who did not appear, and only two years for an appeal by one who did appear. Remissness and negligence to de-

fend the cause thus get three years' advantage over diligence, and then further, the defendant who did not appear has two years more to apply for an appeal; indeed maybe much more, if we give him a right to appeal from the decree refusing to reverse, making it the basis of an appeal, as I think we must, because the law denies him an appeal until he makes the motion to reverse and fails, and, of course, the statute limiting an appeal to two years ought not to run against him while he prosecutes his motion; and, moreover, the statute gives him this remedy by motion, and surely an error committed by the court in deciding it. ought to be the basis of an appeal.  A decree dismissing a bill of review is the basis of an appeal, as it lies within two years from dismissal (*Middleton* v. *Selby*, 19 W. Va., 267), and on parity of reasoning a decree dismissing a motion to reverse must give basis and date for an appeal. See, then, to what unequal, unfair results it would lead to hold that five years is yet the limitation of such motion. The act of 1882, limiting appeal to two years, limits this motion as it does bills of review.  When the Code was enacted, it gave an appeal for five years for those who had appeared and same time for a motion for those who had not appeared.  The intent was to make a like limit for both. It ought to be so now by construction.  It adds to the force of this position to remember that the Code says that on motion, in cases of decrees by default, the court may reverse for any cause for which on appeal this Court could reverse; but if we allow five years we allow reversal on motion for causes which would not be ground of reversal on appeal, because barred.  On these grounds the able circuit judge dismissed the motion and bill of review, as he states in the decree.  I think these views correct.  I know they are not beyond question, but they are sufficiently plausible to warrant their adoption, particularly as they would obviate the intolerable evil of preserving the old limitation for bills of review and motions to reverse. But the other judges do not concur therein, and therefore I proceed to inquire whether there is error in the decree complained of.

It is said the court erred in the original case in accepting as good the return of process signed, "S.

G. Pyle, Dep. for O. W. O. H. S. T. C." Immediately
below is a return as to other parties, signed, "S. G. Pyle,
Dep. for O. W. O. Hardman, S. T. C." The letters for
the name Hardman would perhaps not be bad, but when
both returns are read together, we think the return com-
plained of is good. Service is presumed to have been
made in Tyler County. *Bensimer* v. *Fell*, 35 W. Va., 15,
(12 S. E. 1078).

There is error in decreeing against the debtors a debt
for purchase money long before it was due, as it violates
the contract, and puts on the debtor the burden of prema-
ture payment.

This suit was not, in terms, a suit by one judg-
ment lienor for the benefit of himself and other lien-
ors, but only for himself; nor were they made defendants.
But Code 1891, c. 139, s. 7, allows it to be so treated by al-
lowing all lienors to prove their judgments, and, besides,
the court ordered a reference to convene all liens, and that
made it a suit for all, as if it had been brought for all, or all
had been made defendants. *Livesay* v. *Feamster*, 21 W.
Va., 83; *Jackson* v. *Hall*, *Id.* 601. This statute relates to
procedure only, and would apply to past cases; but the
law before it made the suit, after such reference, a general
lien suit. However, these lien creditors came in by peti-
tion, and were properly entertained, under the cases above
cited.

The point is made that no process issued on the peti-
tions. It must be understood that the practice of simply
filing a petition in a case of somebody else, and taking a
decree for a debt or other relief prejudicial to a party
without process on the petition, is bad. *Morgan* v. *Mor-
gan*, 42 W. Va., 542, (26 S. E. 294). But it is immaterial
in this case, as the parties proved their debts before the
commissioner under the reference, which they could do
without a petition. The statute gave power on such a bill,
without any matter in the bill touching such liens, to prove
the liens, thus making an exception to the general rule that
matter in the pleadings will alone justify a decree of relief.

There can be no question under the act of March 13,
1891 (Code 1891, c. 139, s. 7), that a bill to enforce a
judgment lien must show a return of a *fieri facias*, "No

property found," or that no execution issued on the judgment within two years from its date, else it will be open to demurrer, because only a statute gives this suit, and that makes such conditions. But this suit was begun before that statute, under a law giving right to bring such suit without previous execution (*Marling* v. *Robrecht*, 13 W. Va., 440, Syl. point 6), and this act of 1891 cannot receive a retroactive effect to destroy a suit properly · brought before it. *Walker* v. *Burgess*, 44 W. Va., 399, (30 S. E. 99); *Burns* v. *Hays*, 44 W. Va., 503, (30 S. E. 101).

There is nowhere a showing that the rents would not satisfy the debts in five years. Code 1891, c. 139, s. 7, declares that it must somehow appear that they will not do so before a sale can be had. There is error in the decree in this respect. This has been the law since the act of 1882, if not before.

Another error in the decree is that the land decreed to sale had been sold by Stone and others to W. T. Taylor, the contract providing that if, when the purchase price should be paid, John Taylor, father of W. T. Taylor, should be living, the property was to be conveyed to him, but, if dead, then to W. T. Taylor; and thus John Taylor has a vested contingent estate in the equitable title, and both legal and equitable title, if in different persons, should be before the court. All parties in interest in the title must be before the court. If the father survived the son, the father could relitigate the debt for the purchase money, as he could not be bound by the decree. The purchaser would be jeopardized, and the vendor and W. T. Taylor would be prejudiced by the tendency of the absence of John Taylor as a party to produce a sacrifice of the property at the sale, as a cloud would be hanging over the title.

Another question of importance arises. Hardman purchased the land under the decree, and he was a party to the suit, having filed a petition claiming debts against the land, which were decreed in large amounts to him, and it is claimed that, while a stranger, purchasing under a decree, would be protected in his title against loss by reason of the reversal of the decree, yet, if a party purchased, his title is lost by a reversal. Section 8, chapter 132, Code

1891, says that the purchaser's title shall not be affected by the reversal of the decree. As this question stands, unaffected by any statute, as the law has been stated by the United States Supreme Court and by courts very generally, a stranger to the suit, purchasing upon the faith of a decree in the public courts of the country, where the court has jurisdiction of the subject and the parties, and the parties whose title is affected are before the court, cannot be disturbed in his title by the reversal of the decree. This is a plain principle of policy and justice. Per Baldwin, Judge in *Voorhees* v. *Bank,* 10 Pet., 449; *Gray* v. *Brignardello,* 1 Wall., 627; *Thompson* v. *Tolmie,* 2 Pet., 168; *McGoon,* v. *Scales,* 9 Wall., 23; Ror. Jud. Sales, § 608; *Bank of U. S.* v. *Bank of Washington,* 6 Pet., 8. In Virginia earlier cases are to the reverse, and the tendency of the current of decision is the reverse. *Durrett* v. *Davis,* 24 Grat., 317. Perhaps it is more correct to say that it is an open question, though some late cases favor the rule above stated. *Cocke* v. *Gilpin,* 1 Rob. (Va.) 41; per Lee, Judge in *Parker* v. *McCoy,* 10 Grat., 605; per Moncure, Judge in *Durrett* v. *Davis,* 24 Grat., 317; and *Daniel* v. *Leitch,* 13 Grat., 210; opinion in *Zirkle* v. *McCue,* 26 Grat., 517, 527; See, on the subject, opinion in *Hull* v. *Hull,* 26 W. Va., 30. Now it is regulated by statute. Chapter 132, section 8. Cases holding title good by reason of statute: *Cooper* v. *Hepburn,* 15 Grat., 569; *Capehart* v. *Dowery,* 10 W. Va., 130. Where the error is not in the decree ordering the sale, but that confirming it, section 8, chapter 132, does not protect the purchaser's title, and it falls upon reversal of the decree. *Sinnett* v. *Crolle,* 4 W. Va., 600. This case is a recognition that the law in this State is that, but for a statute, the title of the purchaser would fall upon reversal of the decree. Where necessary parties are not before the court, the statute does not protect the purchaser's title, but it falls with reversal. *Turk* v. *Skiles,* 38 W. Va., 404, (18 S. E. 561). Though a stranger purchasing is protected by the statute, it was certainly the law before it that, if a party interested under the decree were the purchaser, his title would fall with its reversal. *Buchanan* v. *Clark,* 10 Grat., 164; Bart. Ch. Prac. 1095; 2 Daniell, Ch. Prac., 1276. In *Galpin* v. *Page,*

18 Wall., 374, Justice Field, though expressing dissatis-
faction with it, admits that such is the law.  I am of opin-
ion that said statute will not protect the title of a pur-
chaser who is a party and the owner of the debt decreed
against the land for which the land is sold.  Merely being
a party would not alone disturb his purchase, but, if the
decree goes to his benefit, it is otherwise.  The same rea-
son does not exist for protecting him as ,an innocent third
person.  He moves the proceeding.  Shall they who pro-
cure an erroneous decree, and under it get the defendant's
property, hold fast to the fruits of that erroneous decis-
ion?  Must not he make restitution of all he yet has in
hand?  Justice would say so.  "A party obtaining any ad-
vantage through the judgment before reversal must re-
store what he got to the other party after reversal," said
the court in *Reynolds* v. *Harris*, 14 Cal., 680.  The su-
preme court of Missouri said:  "The restitution to which
the party is entitled upon the reversal of an erroneous
judgment is of everything which is still in the possession
of his adversary.  Where a man recovers land in a real
action, and takes possession or acquires title to land or
goods by sale under execution, and the judgment is after-
wards reversed, so far as he is concerned, his title is at an
end, and the land or goods must be restored in specie; not
the value of them, but the things themselves.  There is
an exception where the sale is to a stranger *bona fide*, or
where a third person has *bona fide* acquired some collater-
al right before reversal."  *Gott* v. *Powell*, 41 Mo., 416.
See *Bank of U. S.* v. *Bank of Washington*, 6 Pet., 8; Ror.
Jud. Sales, § 1142; 12 Am. & Eng. Enc. Law, 229, note;
*Corwith* v. *Bank*, 86 Am. Dec., 793.  The Texas court said
such a purchaser is one with notice of the error in the
judgment, *Stroud* v. *Casey*, 78 Am. Dec., 556; *Gould* v.
*Sternburg*, (Ill. Sup.) 21 N, E. 628; *Welcker* v. *Staples*,
(Tenn. Sup.) 12 S. W. 340; 2 Freem. Judgm. § 482.  I can-
not think the act was intended to reverse this principle,
and aid the party active in the procurement of a wrong de-
cree or judgment in perpetuating that wrong, and reap-
ing the fruits of that wrong, made at his instance, and
thus promoting injustice.  The purpose of the statute
was to reverse what had been the rule in Virginia,—that

in every instance of reversal the title was annulled, no matter whether the purchaser was a party or a stranger to the case,—and it was not intended to go so far as to protect the party procuring the erroneous decree for a debt, and purchasing under it. Since writing the above, I have found *Martin* v. *Smith*, 25 W. Va., holding that, where the purchaser is a party, the sale will be set aside. See page 586. Therefore we reverse the decree dismissing the bill of review, and overrule the demurrer thereto and remand the case for further proceedings.

*Reversed.*