# CHARLESTON.

### SCHMERTZ & Co. *v.* HAMMOND.

Submitted January 16, 1902. Decided April 5, 1902.

1. FINAL DECREE—*Lien—Sale Before Ascertainment.*
   Where once a decree has been made fixing the amount of a lien decreed upon land, and its place as a lien, a partial payment does not call for an ascertainment by the court of the balance before a sale under the decree. (p. 411).

2. DECREE OF SALE—*Creditor—Receiver.*

 Where a decree of sale provides for payment to a creditor, allowed a debt by it of money in the hands of a receiver of another court, and provides that when paid it should operate as a partial payment, there is no error in failing to ascertain the amount of such money in the decree, especially where before sale the amount of said money appears in the record of the case. (p. 412).

3. JUDICIAL SALE—*Advance Guaranteed Before Set Aside.*

 A judicial sale will not be set aside for inadequacy alone, unless the inadequacy is so gross as to justify the presumption of fraud. A sale for half the estimated value is not such inadequacy. (29 W. Va. 513). Before setting aside such sale for inadequacy there should be some guaranty of an advance on the sale. (p. 413).

4. ATTORNEY'S LIEN—*Fund to be Followed.*

 An attorney has no lien upon a fund which he is not instrumental in creating, and which never came to his hands. (p. 414).

5. ATTORNEY'S LIEN—*Limited to Special Fund.*

 An attorney's special lien for pay for his services out of a fund in court exists only where his client is entitled to participate in that fund. He cannot claim it out of a fund decreed to go to a party under a right adverse to that of the party represented by the attorney. Such party cannot be compelled to pay for the services of an attorney rendered against him. (p. 415).

6. ATTORNEY'S LIEN—*Fund Consumed by Prior Liens.*

 Where a fund in court arising from a sale of property is consumed by a prior lien, the attorney representing a junior demand has no lien upon that fund for his services. (p. 415).

Appeal from Circuit Court, Cabell County.

Bill by Schmertz & Co. against James Hammond and others. Decree for defendants, and plaintiffs appeal.

*Affirmed.*

SIMMS & ENSLOW, for appellants.

CAMPBELL, HOLT & DUNCAN and MURRAY & KOONCE, for appellees.

BRANNON, JUDGE:

 As will appear from a former decision in this case found in 47 W. Va. 527, Black and Hammond purchased land of Vinson, and by request of Black and Hammond Vinson conveyed

it to their wives, and they and their wives at the same time
made a deed of trust to secure Vinson a balance of purchase
money. Later, Samuel C. Koonce paid Vinson and took an
assignment from him of the purchase money secured by said
trust, and caused the land to be sold under it, and purchased
the land and took a conveyance to himself from the trustee.
Later Samuel C. Koonce conveyed the land to Charles Koonce.
Then Schmertz & Company and other creditors of Black and
Hammond united in a suit in the circuit court of Wayne
County, afterwards removed to Cabell, to set aside as fraudu-
lent, as to creditors, Vinson's conveyance to the wives of Black
and Hammond, the trustees' deed to Samuel C. Koonce and the
deed from Samuel C. Koonce to Charles Koonce, and to subject
the land to the debts of said creditors. These conveyances
were all decreed fraudulent and void as to creditors. On ap-
peal to this Court those transactions were held fraudulent; but
as Samuel C. Koonce had paid with his own money three thou-
sand two hundred and fifty-four dollars and nineteen cents on
the purchase money lien of Vinson this Court substituted him
to Vinson's rights for that sum and its interest, and it was ad-
judged a first lien on the land. Upon the remand of the case
to the Cabell court, that court, taking the view that a discre-
tion was still vested in it, declined to enter a decree proposed as
one conforming to the decision of this Court, and a writ of
*mandamus* was awarded by this Court requiring the entry of
such decree by the circuit court, as will appear in *Koonce* v.
*Doolittle,* 48 W. Va. 592, and then that court entered a decree
according Koonce the said sum and interest as a first lien on the
land, and directed the sale of the land for the payment of that
debt and a number of others decreed against the land. At a
subsequent term of the court the plaintiffs filed an amended and
supplemental bill, having for its object to charge the Koonces
with rents and profits of the land while in their possession, and
also with taxes, and for timber cut on the premises, and with
certain money received from the United States Government for
part of the land condemned to its use, and charge said money
with the payment of Black's and Hammond's debts, and to
abate Koonce's recovery to that extent, and to settle the estate
of James Hammond, then deceased, and convene its creditors.
Upon demurrer this amended and supplemental bill was dis-
missed, and Schmertz and Company appealed.

The demurrer to the amended and supplemental bill was properly sustained, because it sought to open a large field of litigation about things anterior to the decree of the circuit court, and also of this Court, which could and should have been litigated during the pendency of the suit while Koonce's rights were being ascertained. The decrees of the circuit court and this Court settled finally the rights of the parties before that amended and supplemental bill. Indeed, before the decree of the circuit court this Court had fixed a definite sum with which Samuel C. Koonce was entitled to charge the land; and this Court in the *mandamus* case, construing our decision in the prior case, held that our first decision was final and conclusive in fixing a certain sum as a lien on the land in favor of Koonce. Thus there are two adjudications of this Court constituting *res judicata* upon Koonce's right to that fixed sum as a lien. It is not possible, it cannot be, that all the matters proposed to be thrust into this suit after those adjudications, to reopen the flood gate of litigation in a suit of twenty years standing can be allowed. There must be rest and repose at some time in a suit as in other matters. We have a decision of this Court settling the rights of the party at the date of the decree of the circuit court, and a second judgment of this Court, settling the rights of the parties as to Koonce's debt, holding that the former adjudication settled his right to that debt, and then a decree of the circuit court fixing his debt and fastening it upon the land as a finality, and then we have a decree of the circuit court executing the decision of this Court, fixing the amount of the debt of Koonce and levying it as if it were an execution upon a final judgment upon the land. All this adjudication fixed two things, namely, the amount of Koonce's rights against that land, and its preference as a lien. After all this adjudication comes this amended bill to bring in matters prior to that adjudication, to open again the doors of litigation. It was not even presented before the decree of the circuit court, though it was too late then. Whether this adjudication is right or wrong, it is a finality. *Rogers* v. *Rogers,* 37 W. Va. 407; *Corrothers* v. *Sargent,* 20 W. Va. 351.

Another error assigned is, that before second sale, for there have been two under decrees in this case, a sum of money was received by Koonce from the registrar of the United States Court for land which had been condemned out of the tract

by the United States for its use. To sustain this assignment of error we must say that though a court has once adjudicated a debt at a fixed sum and declared its status as a lien upon land, yet a partial payment will prevent the sale of the land for that debt until there shall be a reference to a commissioner to make a report of the balance due, or until there shall be a decree applying the payment and finding the balance. Such a holding would be promotive of endless litigation and costs, and it would answer no useful purpose. The sum once fixed it only remains to apply payments. The rule that liens must be ascertained before sale has been once answered. Does it go further than this? Practically it is rarely difficult for all interested to learn the credits. Any how, they must do so. We can yet say that where payments are numerous, or doubtful and disputed, and grave questions of their application arise, a court may, on request, take an account, but surely the mere fact that a payment has been made cannot avoid a sale. In this case there is no possible ground of error, for the reason that the first report of sale by the special commissioner reported that payment as two hundred and eighty-six dollars and thus it was made certain in the record, and nobody disputed it in the circuit court. But it is objected further that the decree of the circuit court subjecting the land provided that said money should be paid on Koonce's debt, and did not fix its amount, and declared that it should stand as a credit on his debt. We must suppose that the sum, being a matter of record in the Federal court, was ascertainable as a mere fact, and that the amount of the balance of Koonce's debt could be made certain. But, at any rate, the first report of sale put it in the record, so that at the second sale its amount was known. Shall we set aside a sale for such a cause?

Another matter is alleged error in the confirmation of the sale. There were no exceptions to the sale, and we might dismiss this subject with this statement. The decree does say that plaintiffs objected to confirmation "because of inadequacy of price, and for other reasons specified in writing." There is no writing giving these reasons, and we cannot consider them. The objection is too general. *Hanley* v. *Roffe,* 12 W. Va. 401. Next as to inadequacy of price. The land had been sold a month before and the sale set aside because the price, eight thousand dollars, was too low. The second sale produced the

same sum.    Affidavits of individual opinion of the worth of the land placed the property higher; but that is only opinion. There was no offer by any one of greater price; no guaranty that on a third sale the land should fetch more.    This should be required.    17 Am. & Eng. Ency. of Law (2d Ed.) 1006. The open auction on two occasions is the better test.    It is useless to discuss this matter after two sales.    Cases in this Court overrule this objection.    *Moran* v *Clark,* 30 W. Va. 358, 381; *Hughes* v. *Hamilton,* 19 *Id.* 366, 399.    This demand constantly made of courts to destroy a purchaser's right, who has in open auction made the highest bid, on mere opinion of greater value, only estimated at best, and by those who do not wish to buy themselves and are not willing to guarantee more, should be discouraged as harrassing to purchasers, prejudicial to the efficacy of judicial sales, and contrary to settled law.    The inadequacy must be so great as to beget the presumption of fraud and collusion, and "shock the conscience and confound the judgment of any man of common sense.    Half the estimated value is not such inadequacy."    *Bradford* v. *Conihy,* 15 W. Va. 732, 763; *Connel* v. *Wilhelm,* 36 *Id.* 598; *Moran* v. *Clark,* 30 *Id.* 358, 381; *Lalance* v. *Fisher,* 29 *Id.* 512.    These cases show that this constant application to annul fair court sales for mere smallness of price, without an upset bid or guaranty of material advance finds no countenance in law.

### SIMMS AND ENSLOW'S APPEAL.

Simms and Enslow, having rendered service for the plaintiffs as attorneys in this case, after the confirmation of the sale, applied to the court to make them an allowance out of the fund arising from the sale for their services; but the court refused, and they took an appeal.    They were engaged by Schmertz & Company and other creditors to bring this suit to overthrow as fraudulent the conveyances from Vinson to the wives of Black and Hammond, and the deed from the trustee to Samuel C. Koonce under the trust given by Black and Hammond and their wives to secure Vinson the balance of the original purchase money, and the conveyance from Samuel C. Koonce to Charles Koonce, upon an agreement between the counsel and the creditors to allow the counsel a certain per centage out of what money they might realize in the suit on the debts of their

clients. The litigation which they espoused and prosecuted was, from Alpha to Omega, an assault upon Samuel C. Koonce's rights, and charged that his whole conduct in the transaction was fraudulent, and that he had no rights to either land or money. The cause of the clients of these attorneys was just as adversary to the cause of Koonce involved in the case as one cause could possibly be adversary to another. Success of their clients would have anihilated the rights of Koonce. To allow these attorneys is to allow them out of Koonce's money, out of the pocket of the man whom they fought to the finish, and with whom they had no contract, no privity, but only antagonism. The very statement of the proposition denies it tenability. If there were a surplus going to the creditors who engaged these attorneys, they would have a lien upon it for their contingent fee; but their contract was to get their pay only out of what they should realize for their clients, and their clients have no rights in the fund. It goes wholly to Koonce's claim, an adverse claim. "It must always appear that the services of the attorney operated to secure or collect the fund out of which he claims to be paid." Second Edition of American & English Ency. Law, vol. 3, 459.

Did these attorneys secure this fund for Koonce? They took the land from him which he desired to retain and thus worsted his condition probably. And while this Court adjudged him entitled to a sum of money by subrogation, it did so against the efforts of those attorneys. These attorneys did not represent that money going to Koonce, but junior hostile demands, making applicable the following law from page 460 of the work just cited: "Where property or a fund has been brought into court under various executions or attachments, and older executions, which constitute a prior lien, consume the entire fund, an attorney representing the holder of a junior execution, on which nothing is realized, is not entitled to any compensation out of the fund. The rule is that the client must share in the fund in order for his attorney to have any lien on it; the latter can have no higher rights therein than his client had." If any authority were needed the case of *B. & O. R. R. Co.* v. *Brown*, 79 Md. 442, is conclusive. A large fund was in controversy between the Railroad Company, as assignees of certain members of a railroad relief association, and certain other non-assigning members. The Railroad Company was held to

have the right to a certain fraction and the non-assigning members to another fraction of the fund. The syllabus of decision runs thus: "That the attitude of the non-assigning members being directly hostile to the Railroad Company and the members it represented, there was no community of interest between them, and the counsel for such non-assigning members were not entitled to be compensated for their profession as services out of the whole fund in court for distribution, but only out of the five and a half per cent. recovered by their clients." "That one cannot legally claim compensation for voluntary services, however beneficial they may have been, nor for incidental benefits and charges to one flowing to him on account of services' rendered to another by whom he may have been employed. Before legal charge can be sustained there must be a contract of employment, either expressly made or superinduced by the law upon the facts." *McGraw* v. *Canton*, 74 Md. 559. "An attorney has no lien upon a fund which he was not instrumental in creating and which never came to his hands." *Fulton* v. *Harrington*, 7 Houst. (Del.) 182. These cases and *Hand* v. *Railroad*, 21 S. C. 178, and *Wilson* v. *Kelley*, 30 S. C. 483, assert that the attorney must represent the party to whom the fund goes or some one whose recovery enures to the common benefit of all. Where the client gets nothing, his attorney gets nothing. That was the letter of the contract in this case. A quotation above from the Encyclopædia shows that where the fund is absorbed by a prior lien to that of the creditor represented by the attorney, he has no lien. Now, the money going to Koonce was Vinson's purchase money lien, holding preference over the demands of the clients of the attorneys. Would any one claim that if Vinson yet owned that debt he could be made to pay out of it compensation to the attorneys? Surely not. Neither can Koonce, for he stands in Vinson's shoes.

We affirm both decrees of 18th and 20th July, 1901.

*Affirmed.*