# CHARLESTON.

## D. J. PHIPPS v. E. H. LOPINSKY *et al.*

### Submitted October 14, 1924.  Decided October 28, 1924.

1. EQUITY—*Bill Demanding Enforcement of Both Trust and Mechanic's Lien, Not Demurrable.*

   A bill in equity to enforce a trust lien on a lot and building erected thereon by plaintiff, where the trust lien debt covered part of the cost of the building, and also to enforce a mechanic's lien for the unpaid balance of such cost, is not demurrable because both demands are set up in the bill.   (p. 461).

2. MORTGAGES—*Decree for Full Amount of Mechanic's and Trust Liens Where One Note Due and Balance Accelerated, Held Proper.*

   Default having been made in the payment of one of the notes secured by the trust deed, and there being an accelerating clause in the trust whereby all the remaining notes became due, the court could enter a decree for the full amount of the mechanic's lien and of the trust lien, and order a sale of the property to satisfy the decree.   (p. 461).

3. MECHANIC'S LIENS—MORTGAGES—*Unnecessary in Suit to Enforce Mechanic's or Trust Lien to Ascertain Whether Rents and Profits Will Discharge Lien Within Five Years.*

   It is not necessary in a suit to enforce a mechanic's lien or a trust lien on real estate to ascertain whether the property will within five years produce sufficient rents and profits to discharge such lien or liens. The provision in section 7, chapter 139, Code, directing an account of rents and profits in creditors' suits applies only to judgment liens.   (p.462).

4. DAMAGES—*Deductions in Suit to Foreclose Mechanic's and Trust Liens for Damages Paid Tenant for Roof Leakage Properly Denied; Allowance in Mechanic's and Trust Lien Enforcement Suit of Sum Sufficient to Remedy Defects, Proper.*

   Under the facts disclosed in this case the owner was properly denied deductions from the cost of the building for damages paid by the owner to a tenant in the building, caused by

leaks in the roof, and likewise for the owner's inability to rent the basement room, because of its faulty construction; but it was proper to allow him a sufficient sum to remedy defects in materials and workmanship. (p. 462).

Litz, Judge, absent.

Appeal from Circuit Court, Wyoming County.

Suit by D. J. Phipps against E. H. Lopinsky and others. From a decree for plaintiff, the named defendant appeals.

*Affirmed.*

*Strother, Sale, Curd & Tucker,* for appellant.
*J. Albert Toler,* for appellee.

Meredith, President:

Defendant, E. H. Lopinsky, appeals from a decree of the Circuit Court of Wyoming County, rendered August 23, 1923, for the sum of $13,141.00, with interest and costs, which sum is the aggregate of a mechanic's lien debt and a trust lien debt on a house and lot in Mullens.

By written contract, dated August 20, 1921, plaintiff agreed to furnish the materials and labor for and to construct for defendant a one story brick building and basement according to certain plans and specifications, upon defendant's lot located in Mullens. The work was to be done under the direction of and to the satisfaction of defendant's architects, and in case of any discrepancy between the drawings and specifications the architects were to decide which should be followed. The owner was to pay therefor the sum of $14,000; if it should cost more than that sum, by reason of changes in the plans and specifications, or by reason of additions thereto, the owner was to pay therefor; if the work should cost less than $14,000, the contractor and owner should share equally in the difference, the contractor being allowed to include the sum of $1250 for services in arriving at the cost. Upon the completion of the building the owner was to execute his note for the amount due, payable in four months, secured by trust lien upon the property, with the right to renew it for an additional four months without curtailment, and thereafter to renew it for like periods upon the payment of $2000 at each renewal until

the balance was paid; the owner having the right to anticipate payments. The building, with some minor exceptions, was completed February 15, 1922, which exceptions were then agreed upon, and it was then agreed the plaintiff should finish or correct such exceptions before a final certificate of the architect should be given; but the building was turned over to defendant and was occupied by his tenant. On April 4, 1922, plaintiff with his book-keeper and general manager, R. A. Pillow, met at Mullens, the defendant with his representative, L. A. Osborne, an experienced engineer, and defendant's architect, A. W. Wysong, for the purpose of making a settlement. The parties inspected the building, except possibly the roof, and it appears it was accepted by defendant, except certain minor defects were pointed out and these the plaintiff agreed to correct, and it is claimed by him he did afterward fully correct them. At that time plaintiff presented his bill for extra work, on which defendant had paid $1000 on March 14th, and at the meeting paid the further sum of $2000, leaving a balance for extra work, as plaintiff claimed, the sum of $1659.17, and which defendant agreed to pay as soon as the minor defects were corrected, and that defendant should execute his seven notes for $2000 each, secured by trust deed on the property, payable with interest in 8, 12, 16, 20, 24, 28 and 32 months. At this meeting several defects in material and workmanship were pointed out, and it was finally agreed that certain of them could and should be corrected, while certain others could not be corrected; that on account of those that could not be corrected there should be deducted from the bill for extra work $150.00. We think this point is fully established by the testimony. The defendant, however, failed to execute the notes and trust deed; whereupon, on May 20, 1922, plaintiff filed a mechanic's lien on the property for the sum of $15,601.76, claiming that as the balance due. On June 15, 1922, the parties had another conference at Welch. It was then agreed that defendant should execute the trust deed and notes, but defendant claims that this was not to be construed as a waiver by him of any defects in materials or work; that the architect had not then issued the final certificate and the building had not been accepted, and that this was not to prejudice defendant in his right to

have the building and extra work completed as agreed upon. Later an agreement covering these points was drawn by defendant's counsel and on June 20, 1922, this agreement with the trust duly executed by defendant was mailed by defendant's counsel to plaintiff. For some unexplained reason the notes were not enclosed. On June 21st plaintiff wrote defendant's counsel, acknowledging receipt of the trust deed and agreement, called their attention to the fact that the notes had not been sent, and also that he saw no good reason why the agreement should be signed by him, as he had already more than fulfilled the original agreement; that defendant had ample funds in his hands owing for extra work, which would cover the corrections to be made and that he would finish these before demanding any more money. Defendant's counsel next day mailed the notes to plaintiff. The trust was promptly recorded, and plaintiff having, as he says, completed the corrections agreed upon, on September 25th defendant's architect gave plaintiff a final certificate.

The trust is dated March 1, 1922; instead of securing one note of $14,000 as appears to have been contemplated by the original contract, it secures the seven notes of $2000 each, above described. It also contains an accelerating clause, to the effect that if default be made in the payment of any one of the notes, for more than ten days, after it becomes due, then all shall become due, without any notice or proceeding on the part of the owner of the note, and the trustee shall then sell the property.

Defendant made default in the payment of the first note and also failed to pay the balance owing for extra work, claimed by plaintiff to be $1601.76. Whereupon, plaintiff on November 17, 1922, brought this suit to enforce his mechanic's lien and also to enforce payment of his trust lien debt, claiming that all the notes were then due. He exhibits both liens, but does not exhibit the written contract. He avers, however, that it was agreed if the cost of the building should exceed $14,000, defendant would execute his note and trust deed for that amount and would pay in cash the excess upon completion of the building. He then sets up the various settlements above mentioned, the execution of the seven notes and the trust deed, the completion of the work, and his right to enforce his mechanic's lien for $1601.76 and his trust lien;

he avers that defendant agreed when he executed the notes and trust to pay immediately in cash the $1601.76.

Defendant demurred to and answered the original bill. The demurrer was overruled. An amended bill was filed, bringing in some prior trust lienors and the trustee holding the legal title. The demurrer to the amended bill was overruled, but there was no answer thereto filed.

The first ground urged for reversal, and, we believe, the main point relied on, is that the court improperly overruled defendant's demurrer. It is claimed (1) that plaintiff could not maintain his bill to enforce his mechanic's lien because the original contract shows that he waived his right to a mechanic's lien, and (2) that he could not maintain his bill to enforce his trust lien, because nothing is stated in the bill showing he could not properly proceed under the trust. The answer to the first objection is that there is nothing on the face of the bill to show that plaintiff waived his right to a mechanic's lien for the extra work, the unpaid items as he states, amounting to $1601.76. This is the balance he claims by way of mechanic's lien, he having credited upon it the amount of the trust lien notes. He does not exhibit with his bill a copy of the contract. Had he done so, a different question might arise, as it may be doubted whether the whole cost, even for extras beyond the $14,000, was not to be secured by the trust. But such does not appear from the bill, nor seem to be contended by defendant. On its face it shows a mechanic's lien for $1601.76. For that reason it states a cause of action properly cognizable in a court of equity. Moreover, the defendant in his answer does not deny the construction placed upon the contract by plaintiff. He tacitly admits that the amount for extra work was to be paid in cash upon the completion of the work.

Of course, if plaintiff had a valid mechanic's lien, and also a valid trust lien upon the same property, it was proper to set up both claims in his bill, so that if there had been a default under the trust, the court could decree a sale free from the trust lien; and this could be done, whether the trust lien were one which, standing alone, could or could not be enforced in a court of equity. The bill would not be de-

murrable because it set up both demands. We think the demurrer was properly overruled.

One other point urged is that there is no evidence that the property will not rent for sufficient in five years to pay off the liens thereon. This is not necessary as the statute requiring an account of the rents and profits arising from lands, §7, ch. 139, Code, applies only to suits for the enforcement of judgment liens. It has no application to suits to enforce mechanic's liens. *Lewis, Hubbard & Co.* v. *Toney,* 76 W. Va. 80, 85 S. E. 30; *Neff* v. *Wooding,* 83 *Va.* 432, 2 S. E. 731.

Another point is that there is nothing in the record showing that the prior liens were paid, although the decree finds that they were. Defendant can not complain and his supposed prior lien creditors do not. There is nothing in this point.

Defendant complains because he was not given a deduction from plaintiff's claim for the amount he was compelled to allow his tenant who occupied the building on account of damages caused by leaks in the roof. His tenant's merchandise was damaged by rain leaking through and defendant shows he compromised his claim at $3600; we do not think he was entitled to the deduction. The testimony of his own witness shows he could have replaced the roof at a cost of about $300; besides, it is not clear that plaintiff did not construct the roof according to the plans and specifications. The plans and specifications were ambiguous, admittedly so; plaintiffs used the materials specified, but did not use tin for "flashing". There was nothing specifically requiring it, except the word "flashing" upon the plans or drawings. The specifications furnished by the Johns-Manville Company, whose roofing was used, specified that the "flashing" was to be made out of the same materials as the roofing. These latter specifications were followed, and as a result the roof was very defective. But defendant was bound to exercise due care so as to minimize his damages. He could have replaced the roof, and the cost for doing this was allowed by the decree, along with divers other items.

Nor do we think the defendant can properly complain because he could not rent the basement. It filled with water and became unfit for occupancy, but under the evidence we can not say that this was plaintiff's fault. Even if it were,

defendant could have applied his own remedy,—corrected any defects, and put the basement in condition for use. He could not sit idly by, knowing the defects, and thus pay off plaintiff's claim by loss of rents.

Defendant also claims the trust deed was surreptitiously obtained and is therefore invalid; that because the plaintiff waived his right to a mechanic's lien by the original contract, his suit should be for specific performance to enforce the execution of a valid trust in accordance with the terms of the contract. This contention is not sound. When the parties met at Welch in June, 1922, for the purpose of adjusting their differences, we have no doubt it was agreed that plaintiff should complete certain corrections agreed upon; it may also be conceded that it was also agreed as claimed by defendant that the execution of the trust and delivery of his notes should not operate as a waiver of defendant's right to require plaintiff to make good his contract. But merely because plaintiff declined to execute the new contract, mailed to him by defendant's counsel on June 20, 1922, which seems to have been prepared to cover this understanding did not render the trust deed and notes invalid. Plaintiff advised defendant's counsel that he would not sign this new agreement before the notes were delivered to him. So the trust and notes were not surreptitiously obtained.

That the accelerating clause in the trust was not called for in the original agreement does not render the trust invalid. In this respect it may be a departure from the contract, as it is in respect to the number of notes and the terms of payment. But the parties had a right to change the terms of payment. The trust is valid. Defendant having defaulted in the payment of the first note, all the others became due, and the court had a right to so declare.

The court allowed the defendant the sum of $951.00 as a deduction from plaintiff's claims, the highest estimate made by any of defendant's witnesses as the cost of replacing or correcting defects in materials or work. This includes putting on an entirely new roof. If any error was committed by the court it was in allowing too great a deduction. We will not undertake to analyze the items, but the decree will be affirmed.

*Affirmed.*