# CHARLESTON.

GEORGE BLANKENSHIP *v.* ANDY MONGINI

(No. 6104)

Submitted May 1, 1928.   Decided May 8, 1928.

1.  JUDICIAL SALES—*Judicial Sale to One Not Party to Proceedings Will Not be Disturbed After Confirmation, for Error Not Going to Jurisdiction, in Absence of Fraud or Other Adventitious Circumstance (Code, c. 132, § 8).*

    After confirmation of a judicial sale to one not a party to the proceedings, the sale will not be disturbed, in the absence of fraud or other adventitious circumstance, for error which does not go to the jurisdiction of the court.   (p. 531.)
    (Judicial Sales, 35 C. J. § 160.)

2.  SAME—*Departure by Court From Rules of Law or Procedure, After Acquiring Jurisdiction of Parties and Subject Matter is Not Jurisdictional Error Constituting Grounds for Setting Aside Judicial Sale.*

    Where a court has lawfully acquired jurisdiction of the parties and the subject matter of the litigation, subsequent departure by the court from the rules of law or procedure in the exercise of that jurisdiction, is not jurisdictional error. ·   (p. 533.)
    (Judicial Sales, 35 C. J. § 159.)

3.  SAME—*Inadequacy of Price Will Not Avoid Judicial Sale After Confirmation, Unless Clearly Importing Fraud.*

    After confirmation of a judicial sale, inadequacy of price alone will not avoid the sale, unless the inadequacy clearly imports fraud.   (p. 533.)
    (Judicial Sales, 35 C. J. § 164.)

4.  SAME—*Highest Competitive Bid at Public Judicial Sale, Properly Advertised and Conducted, is Ordinarily Accepted as Fair Criterion for Value, in Absence of Contrary Evidence.*

    The highest competitive bid at a public judicial sale, properly advertised and conducted is ordinarily accepted by ·courts. as a fair criterion of the value of the property sold, in the absence of evidence to the contrary.   (p. 534.)
    (Judicial Sales, 35 C. J. § 167.)

5.  SAME—*Burden of Proof Rests on Party Seeking to Avoid Judicial Sale.*

    The burden rests on one seeking to avoid a judicial sale. (p. 534.) ·
    (Judicial Sales, 35 C. J. § 186.)

6.  EQUITY—*In Suit to Foreclose Vendor's Lien, Plaintiff's
    Amended Bill, Supported by Affidavit, May be Treated as
    Special Written Reply, Controverting Defendant's Claim
    for Affirmative Relief Under Statute Relating to Pleading
    (Code, c. 125, § 36).*

    Point 3 of the syllabus of *Hale* v. *Hale*, 104 W. Va. 254, on
    the practice of courts to regard the substance of a pleading
    rather than its name, applied.   (p. 531.)

    (NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not
    part of syllabi.)

Appeal from Circuit Court, Raleigh County.

Suit by George Blankenship against Andy Mongini.  From
a decree for defendant, plaintiff appeals.

*Reversed and remanded.*

*C. M. Ward* and *Carl C. Sanders,* for appellant.
*W. H. Rardin* and *W. W. Goldsmith,* for appellee.

HATCHER, JUDGE:

Blankenship sold a lot to Mongini with covenants of special
warranty and ''the right to convey''.  Part of the considera-
tion for the lot was paid in cash and a vendor's lien reserved
for the balance.  The vendee failed to pay the balance and
this suit was brought to subject the lot to sale under the
vendor's lien.  In Mongini's answer to the original bill he
admitted the purchase of the lot but alleged that Blankenship
had no title to and no right to convey it, and that the title
thereto was in the heirs of Ida S. Bolen, deceased, and prayed
that his deed be cancelled and his payment on the purchase
price refunded.  Blankenship filed what he terms an amended
bill, alleging that he purchased the lot at a judicial sale in the
suit of *Farley* v. *Bolen, et als.;* that he obtained an absolute
title to the lot by virtue of his deed from the commissioner in
that suit; and that at the time he conveyed it to the defendant
he had a perfect title to it.  Mongini answered the amended
bill and alleged that Blankenship did not acquire title to the
lot by reason of his purchase in the Farley-Bolen suit.  Blank-
enship then filed a second amended bill in which he detailed at
length the proceedings in the Farley-Bolen case, and filed

copies of certain papers and decrees in that suit. Mongini countered with another answer in which he again avers that Blankenship did not have any legal or equitable title to the lot by reason of the proceedings in the Farley-Bolen suit. The defendant further alleged that he had never been allowed to take possession of the property nor receive any rents or profits from it, but did not state who had withheld the lot from him.

Defendant contends that each of his answers claiming affirmative relief against the plaintiff were based in part upon new matter; that plaintiff filed only a general replication to the first answer; that no replications were filed to the other answers; that no issue was raised upon the allegations in his second and third answers; and that by reason of section 36, chapter 125, Code, proof was not required, and his allegations must be taken as true. Section 36 provides ''every material allegation of new matter in the answer constituting a claim for affirmative relief, not controverted by a special reply in writing, shall for the purposes of the suit, be taken as true, and no proof thereof be required.'' Where such an answer is verified section 38 of the same chapter requires the plaintiff to verify his special reply thereto. The material allegation calling for relief is the same in each one of the answers, to-wit, that the plaintiff had no title. Each answer was verified. Plaintiff's first amended bill was supported by an affidavit, and may, therefore, be treated as the special reply in writing controverting defendant's claim for affirmative relief required by the statute. *Hale* v. *Hale,* 104 W. Va. 254, 258. The second amended bill was not verified and therefore cannot be so regarded. In the first amended bill plaintiff denied the allegation of no title in defendant's answer and set forth the manner in which he acquired his title. The subsequent charges of no right to convey made in defendant's second and third answers, are simply repetitions of the charge in the first answer, and may be treated either as surplusage or as sufficiently traversed by plaintiff's first amended bill. That first denial put the defendant on proof.

The sale to Blankenship having been made under a decree of a court, and the sale confirmed, Mongini admits that Blankenship's title is protected under section 8, chapter 132, Code, against any errors which are not jurisdictional. See *Chapman*

*v. Branch,* 72 W. Va. 54, 58. He attacks the jurisdiction of the court to make the sale as follows:

(1) He charges that the bill in the Farley-Bolen suit does not allege that the estate of Ida S. Bolen, (which owned the land in question), was indebted to Farley; that the exhibit filed with the bill shows that the claim of Farley was personal against J. B. Bolen; and that the decree entered in the case is against Bolen personally. The bill alleges that Farley acquired a judgment against the Administrator of Ida S. Bolen, deceased, on August 4, 1921, and files with the bill a certified copy of that judgment, which is the exhibit to which defendant refers. The copy of the judgment shows that a recovery was had by Farley against J. B. Bolen "as Administrator of the estate of Ida S. Bolen, deceased". It further alleges that the judgment thus acquired is "a lien upon the real estate of the said Ida S. Bolen, deceased." The bill also alleges that the lot is all of the property of which Ida S. Bolen died seized and possessed, and prays that the lot be sold for the purpose of paying Farley's judgment. The decree adjudges that the judgment of August 4, 1921, is a valid and subsisting lien against the lot; it orders a recovery against Bolen *as administrator* of, etc., and directs that the lot be sold to satisfy the judgment. We are therefore of opinion that the bill sufficiently alleges a debt against the estate of Ida S. Bolen, deceased, and that the pronouncement of the decree is against that estate. The mere fact that in some of the proceedings reference is had to "J. B. Bolen, Administrator of", etc., instead of "J. B. Bolen, as Administrator of", etc., does not support defendant's contention.

(2) Defendant also says that if it be held that Farley was seeking in effect to collect a claim against the estate of Ida S. Bolen, nevertheless there was no sale of the curtesy consummate of J. B. Bolen, her husband, nor any attempt to dispose of such curtesy.

Bolen was made a party to the suit in his personal right as well as administrator. It then became his duty to protect his personal interest in the lot. A sale of the lot was ordered to pay the lien against it. He made no protest whatsoever against the decree. He is therefore bound by it.

(3) The decree of sale recites that an answer was filed on

behalf of four infants, naming them. The summons and the bill show that there were five infants. Defendant contends that Blankenship did not acquire the title of Elizabeth I. Bolen, the infant whose name is omitted from the decree.

The answer of the guardian ad litem which is filed with the proceedings specifically includes Elizabeth, and her name is signed to the answer by him. The failure in the decree to name Elizabeth is simply a typographical omission, and is correctible by the record. *Chapman* v. *Branch, supra.*

(4) Defendant further says that while the bill in that suit alleges that Ida S. Bolen owned no personal property at the time of her death, no proof was taken in support of that charge and the court was therefore without jurisdiction to sell the real estate, citing *Schilb* v. *Moon,* 65 W. Va. 564. That case does hold it to be error to proceed with a sale of the land of the decedent without ascertaining whether he left personal estate, and if the court so proceeds, the decree *must be reversed.* It does not hold however, and none of the cases cited in the opinion holds, that such procedure renders the decree *void.* If the decree of sale in the Farley-Bolen suit is merely erroneous for that reason, and not void, the title of Blankenship is not affected by that error. The protection afforded him under section 8, chapter 132, Code, is the same in this case as if the lot had belonged to adults. *Chapman* v. *Branch, supra.* Here the court by proper process and pleading acquired jurisdiction of both the parties and the subject matter. Subsequent departure from the rules of law or procedure in the exercise of that jurisdiction may be cause for reversal, but is not jurisdictional error. *Stewart* v. *Tennant,* 52 W. Va. 559, (point 8. Syl.); *Hogan* v. *Ward,* 87 W. Va. 682.

The lot was sold by the commissioner on September 5, 1923, bringing $1,225.00, and the sale was confirmed the following day. Mongini purchased the lot on December 29, 1923, at the price of $3,081.10. His final contention is that the difference in the price at the two sales (so close in point of time) shows that the price realized at the commissioner's sale was grossly inadequate, and therefore the sale to Blankenship may be set aside upon suit by the infant heirs, citing *Bank* v. *Jarvis,* 28 W. Va. 805. That case so far as it supports defendant's contention is overruled by *Eakin* v. *Eakin,* 83 W. Va. 512. The

*Eakin* case holds that after confirmation of a judicial sale, the rights of the purchaser become vested, and that nothing except fraud, mistake or some adventitious circumstance will warrant a court in avoiding the sale. Mere inadequacy of price, the court said, would not suffice unless the inadequacy clearly imported fraud or was accompanied by facts or circumstances which would warrant the avoidance of a like sale between private parties. This is the law generally. 35 C. J. p. 96, section 156; p. 101, section 164; 16 R. C. L. p. 100, section 13. Blankenship is not charged here with fraud or collusion. There is no suggestion of misconduct or impropriety on the part of any one in connection with the judicial sale. There is no evidence whatsoever of the market value of the lot in September 1923, except the price it brought at the commissioner's sale. Property sold under a judicial decree will rarely bring as large price as if sold extrajudicially. In the absence of proof to the contrary, however, the highest competitive bid at an open judicial sale properly advertised and fairly conducted is ordinarily accepted by courts as a fair criterion of the value of the property sold. *Bennet* v. *Ford,* 113 Va. 442. On the other hand the price paid for property at a private sale is presumptive evidence of its value, if the sale is voluntary, bona fide and between parties competent to contract. But the purchase price, whether at public or private sale is not conclusive of value. 23 C. J. p. 57, secs. 1799, 1800. Therefore the mere fact that Mongini paid a much greater price for the lot than it brought at the commissioner's sale does not alone establish the price he paid, as its true value. He is not shown to be familiar with the market value of property in the vicinity of the lot. He is not even shown to be of sound business judgment. It may be that he paid an excessive price for the lot. His anxiety to be rid of his purchase encourages that hypothesis. The burden is on him to establish his contention affirmatively rather than inferentially. *Bennet* v. *Ford, supra.* He has not carried that burden. He has simply offered a presumption to offset an inference.

The defendant has failed to show that the plaintiff's title is defeasible. The decree of the lower court is accordingly reversed.

*Reversed and remanded.*