# CHARLESTON.

THE PEOPLES BANK OF PHILIPPI, *who sues, etc., v.* ANN CAIN, *Administratrix, etc., et als.*

(No. 6122)

Submitted April 23, 1929.    Decided April 30, 1929.

*Wm. T. George,* for appellant.
*H. J. Poling,* for appellee.

LIVELY, JUDGE:

Plaintiff below, hereinafter referred to as plaintiff, filed its bill against appellant as administratrix of the estate of Patrick Cain and in her own right, and other heirs, as a creditor of the estate.

The suit is by a creditor for itself and all other creditors against the administratrix and the heirs and distributees for the purpose of settling up the administration, selling the real estate of decedent, and paying the indebtedness. An amended bill avers that the estate is indebted to plaintiff in the sum of $304.50 reduced to judgment in the lifetime of decedent; that decedent had no personal property at the time of his death; that he owned a parcel of real estate in the county consisting of 69.120 acres; that defendants, naming them, are the heirs; that Ann Cain qualified as administratrix in June, 1924, and is now acting as such; and prays for a settlement of her administration accounts; the ascertainment of the debts and their priorities; the real estate owned and possessed by Patrick Cain; the stating of all proper accounts; and for general relief. The printed record does not show when the bill was filed; but by an order of January term, 1926, the bill was taken as confessed by all defendants and the cause was referred to a master commissioner who was required to ascertain the real estate, the rental value thereof, the liens against the same in their order of dignity and priority, and to settle the accounts of the administratrix. The commissioner later reported (report filed April 12, 1926), that Patrick Cain at the time of his death owned an undivided one-half interest in a tract of 69.120 acres in Union District, with an annual rental value of $12.50; that plaintiff had the first lien thereon for $346.83; and Citizens National Bank of Philippi had the second lien thereon for $313.65. He further reported that the administratrix, though summoned to appear and settle her accounts, had failed to do so, and therefore he could report no settlement. Later (impossible to say on what date from the printed record) the cause was recommitted to the commissioner for the purpose of settling the accounts of the administratrix and a rule awarded against her to show cause why she should not appear before him and settle. The commissioner reported on August 27, 1926, failure to get her to make settlement. However, the master commissioner by report of October 23, 1926, showed a settlement of her accounts before him in which she had remaining in her hands the sum of $7.61 which she claimed as commissions. At the

following term, by decree entered February 11, 1927, there being no exceptions thereto, the report was confirmed. Plaintiff's debt and Citizens National Bank's debt were decreed to be liens on the one-half undivided interest of decedent in the land. A special commissioner was directed to sell the interest in the land after notice and by way of public auction. At this term of court and prior to the entry of this decree, defendant, Ann Cain, as administratrix, and in her own right, tendered and filed her separate demurrer and answer to the bill. The demurrer says that the suit was brought by plaintiff within one year after respondent had qualified as administratrix, and therefore should be dismissed as prematurely brought; and that the execution on plaintiff's judgment set up in the bill was improperly issued and returned, therefore no suit could be predicated thereon. The answer says that respondent's decedent, Patrick Cain, was surety only on plaintiff's debt, and that plaintiff's remedy should first be against the principal in that debt, Julia Maloy. The answer denies the validity of a judgment in favor of Wm. Post, but says if that judgment is valid, it is one of suretyship for Julia Maloy and Ambrose Maloy, principals, and Post's remedy should first be exhausted against said principals. There is a paragraph in the answer denying all the allegations of the bill not admitted to be true, and calls for full proof. The Wm. Post claim, referred to in the *answer*, came into the case at that term by a *petition* by Post in which he set up a judgment in favor of Trader's National Bank of Buckhannon against Ambrose Maloy, Pat Cain, Annie Cain and William Post rendered by the Upshur county circuit court April 22, 1924, for $203.89 and costs, which petitioner avers he had paid, and which had been assigned to him by the judgment creditor. Post asked to be made a party to the creditors' suit and prayed for a decree in his favor as a first lienor on the land, and accompanied his petition by affidavit that prior to that time he had no knowledge of the pendency of this creditors' suit. Upon the coming in of this petition, and the answer to plaintiff's bill, the court took the case upon the bill and exhibits, the demurrer and answer, the commissioner's report to which no exceptions were filed,

the proceedings theretofore had and orders entered; and rendered the decree of February 11, 1927, complained of by this appeal. The decree overruled the demurrer, confirmed the report, reserved for future determination the question of priority of Wm. Post's alleged judgment lien for the coming in of evidence thereon to be taken by the parties—the right to take which evidence was expressly reserved to them. The decree ordered sale of the land. Later, on May 26, 1927, Ann Cain in her own right moved the court to set aside its decree of February 11, 1927, notice of which motion had been given, and the notice docketed on April 14, 1927, the ground being that the liens on the land decreed to be sold had not been fixed in their amounts and priorities. This motion was denied.

By this appeal the decree of February 11, 1927, and the order of May 26, 1927, refusing to set that decree aside, are sought to be declared erroneous and to be reversed and annulled. The main ground relied upon for reversal is the failure of the court to ascertain the liens on the land in the order of their dignities and priorities before ordering sale of the land. It is a very firmly settled rule of chancery procedure that real estate should not be sold to satisfy liens thereon without first ascertaining the amounts of each and fixing them in the order of their dignity and priority. It is error not to do so. The reason for the rule is that if the liens be not ascertained in their order of payment it has a tendency to discourage the creditors from bidding in order to protect their respective liens. *Coles, Adm'r.* v. *M'Rae,* 6 Rand. (Va.) 644; *Iaege* v. *Bossieux,* 15 Grat. (Va.) 83; *Anderson* v. *Nagle,* 12 W. Va. 98; *Parsons* v. *Thornburg,* 17 W. Va. 356.

There was error in the decree in this regard; but wherein is appellant, Ann Cain, prejudiced thereby? It may be said that the reason for the rule fixing priority of liens is for her benefit both as administratrix and in her own right, for by following the rule, the land would likely bring a better price at the sale. However that may be, the record shows that the land was actually sold on May 9, 1927, by the special commissioner to Isaac Mitchell for $475.00 cash, report having been duly made thereof to court and that report confirmed

without objection or exception; and a deed directed to be made to the purchaser. Under section 8, chapter 132 of the Code, Mitchell's title to the land could not be affected by a reversal of the decree of sale for error. That section says: "If a sale of property be made under a decree or order of court, and such sale be confirmed, though such decree or order be afterwards reversed or set aside, the title of the purchaser at such sale shall not be affected thereby; but there may be restitution of the proceeds of sale to those entitled." Before this statute was enacted, a purchaser at judicial sale was likely to lose his purchase by reversal of the decree of sale for some error in the case, and a few purchasers had the temerity to risk their money for that reason. Purchasers became few, and properties were prevented from bringing anything like market value. To cure that unbearable condition of judicial sales (often described on the street as "like buying a pig in a poke") the statute was passed. Here we have a rule of chancery procedure requiring liens to be ascertained in order that property sold at judicial sale may bring more money; and a statute which is likewise designed to make the property bring more money at the sale. A reversal of the decree for error will be of no benefit to appellant for the land cannot be resold. Mitchell was not a party to the suit and in no way caused the error or sale. No exception was made to the report of sale for inadequacy of price at which it sold, and no objection interposed to the decree of confirmation. The reason for fixing the liens prior to sale in so far as it affects appellant has been lost by the sale and confirmation. What benefit therefore will it be to her if the decree of sale be reversed? Why should she complain of an error, the correction of which would avail her nothing? The purchase money takes the place of the land, and is held under the decree subject to her right to defeat Post's alleged judgment. As a basis of reversal of a judgment or decree for error, a litigant must show that the error is prejudicial to him. This proposition is so elementary that citation of precedent and authority would serve no useful purpose, and would only encumber the reports of our decisions. We have a simi-

lar case to this one in *Lowther* v. *Oil & Coal Company*, 75 W. Va. 171. See points 6 and 7 of the syllabus.

It is argued that the demurrer should have been sustained to the bill because of want of proper parties. The demurrer filed does not suggest that reason as a ground. It is said that the heirs of Michael Cain were necessary parties because the deed (exhibited with the bill) of Val Cain and wife to Patrick Cain, the decedent, for the land sold, conveys the grantors' entire interest they have and might hereafter have in the land formerly owned by Michael Cain, describing it by metes and bounds. The argument is that without the heirs of Michael Cain being before the court it could not be determined what interest Val Cain and wife had to the land or how they obtained it. The commissioner reported that decedent owned in fee an undivided one-half interest in the land. The evidence justified that finding. If the interest reported is more than the decedent owned, appellant cannot complain for that finding is to her benefit; if less, then she still has the excess not sold for the estate. She made no exception to the commissioner's report. Another point of error is that the bill charged full ownership of decedent in the land, and the court found and decreed a one-half interest only in decedent, and therefore there is no basis in the pleading for the decree. The allegation is a sufficient basis for the decree. The prayer asks for ascertainment of the land of which Cain died seized and possessed. It is not unusual for a pleader to claim more than he can prove, or the evidence when taken will justify. The answer of appellant to plaintiff's bill is that Patrick Cain was only surety on plaintiff's debt on which its judgment was rendered and that therefore the lands of Julia Maloy, the principal, in that debt, should first be proceeded against. The other part of the answer is directed at the Wm. Post claim set up in his petition, which is not mentioned in plaintiff's bill. This answer coming in when this cause was ready for final decree, not accompanied with affidavit showing good cause was not sufficient to delay the submission of the case under section 53, chapter 125, Code.

Appellant is perhaps to be commended in appealing from a decree which shows plain error. The appeal serves to ac-

centuate and bring to the attention of the trial chancellors the rule of equity requiring liens to be fixed in the order of their dignity and priority on land before it is decreed to be sold. Her appeal serves to "keep the law straight." But she can receive no personal benefit in her own right or as administratrix by a reversal, and we reluctantly decline to disturb the decree.

*Affirmed.*