MERCHANTS NATIONAL BANK OF POINT PLEASANT *v.* I. C. RALPHSNYDER *et al.*

(No. 7190)

Submitted March 7, 1933.   Decided March 21, 1933.

*G. W. Ford,* for appellants.

*Hogg & Hogg,* for Merchants' National Bank.

*Harvey W. Harmer,* and *Jas. R. Moreland,* for Louise Jarvis Currence, *executrix.*

*Tusca Morris* and *Robert C. Morris,* for Lucille Gas Co.

*Trevy Nutter,* for Buckeye Savings & Loan Co.

*Deveny & Furbee,* for National Bank of Fairmont.

HATCHER, JUDGE:

This is a general creditors' suit brought in the circuit court of Taylor County in 1927 by the plaintiff against I. C. and W. M. Ralphsnyder. Their lien creditors and G. M. Ralphsnyder and others, were made parties. Certain real estate of the Ralphsnyders was sold, and they appeal from both the decree directing, and the decree confirming, the sale.

A deed of trust was executed July 9, 1913, by I. C., W. M. and G. M. Ralphsnyder (hereinafter for brevity referred to by their several initials) on 213 acres in Monongalia and 873 acres in Preston county, to secure Buckeye Savings & Loan Society in the payment of a note of $16,000.00, of which I. C. and W. M. were the makers. The 873 acres was owned solely by W. M.; he and I. C. and G. M. were equally interested in the 213 acres. These two tracts constituted the main real

estate holdings of the Ralphsnyders. The 873 acres was purchased by the state in 1925 for the non-payment of taxes in 1923 and ordered to be sold by a decree entered on December 31, 1928, in a suit brought by the commissioner of school lands, in the circuit court of Preston county. That order of sale was later confirmed in this court (though a sale under the decree was set aside.) See *State* v. *Felty*, 109 W. Va. 384, 155 S. E. 122. Because of the above facts, the circuit court of Taylor county held that the tract could not be sold in the instant suit, the decree reciting that this was "a fact which is conceded".

The 213 acres and some other real estate were ordered to be sold by a decree entered February 23, 1931, and the sale was regularly advertised for thirty days. The property was offered on May 23, 1931, but no substantial bids were received, and the sale was continued (by proclamation and posting) until May 29th, when the 213 acres was sold for $20,100 to New England Fuel & Transportation Company. An upset bid of $22,100 was promptly filed by Lucille Gas Coal Company and the court ordered a re-sale of the tract to be made on June 18th, after publication thereof one time in a local newspaper on or before June 11th. This was done, and the tract was purchased on June 18th by the Lucille Company at $27,600. The special commissioners reported that before offering the tract as a whole, they offered the two-thirds undivided interest of I. C. and W. M., but received no bids. This plan of sale was in pursuance of both the request of G. M. (in his answer) and the order of the court. The tract was sold for cash, which was permissible under *Stafford* v. *Jones*, 73 W. Va. 299, 80 S. E. 825, since the deed of trust called for a cash sale, and had priority over the other liens (except those of taxes) and the debt secured thereby was long past due. The sale was confirmed by the court on June 20th. The balance due the Buckeye Company on the note of I. C. and W. M. was $8,607.31, and their two-thirds interest in the sales price of the 213 acres was more than ample to satisfy that balance. So, after pro rata payments of costs and of the taxes for 1930, the remainder of one-third of the purchase price was decreed to belong to G. M. Other real estate consisting of three parcels was sold to D. S. Brown, R. C. McOlvin and Nora E.

Kennedy, respectively, and brought, in all, $5,155. These sales were also confirmed.

The appellants' brief objects earnestly to the finding of the court that taxes amounting to $5,520.42 were liens on the 873 acres, since that tract was not sold in this suit. That finding was improper, but those taxes were reported by the commissioner and no exception taken thereto. The order of the court made a general requirement that all the liens reported—which would include the $5,520.42—be paid within thirty days by the Ralphsnyders and in default of such payment that the property be sold. The Ralphsnyders did not call the attention of the court to this erroneous inclusion and they made no showing that they would or could have complied with the order, had it been free of that error. From the record they appear to be hopelessly insolvent. At the sale, G. M. announced to the commissioners that he had no money to pay even the delinquent taxes on the 213 acres. In distributing the proceeds from the sales of the other lands, no payment was in fact made by the commissioners on the taxes against the 873 acres. Consequently we cannot see that appellants were in any way prejudiced by the above error.

The bill alleged that the rental of the real estate of I. C. and W. M. for five years would not pay off their indebtedness, and this allegation was not denied. No investigation of the allegation was requisite, under *Abney, Barnes Co.* v. *Coal Co.,* 83 W. Va. 292, 301, 98 S. E. 298, 299. However, the commissioner did report in accord with the allegation and the court confirmed the report. But appellants' brief complains because there was no separate finding as to the rental value of the real estate of G. M. He was not a lien debtor of the plaintiff, was not proceeded against as such, and was brought into the proceeding solely because of his joinder in the deed of trust with the lien debtors, I. C. and W. M. No attempt whatever was made to settle his affairs and his interest in the proceeds of the 213 acres was specifically set apart to him by the decree of the court. The brief continues: "Again, the interest of George M. Ralphsnyder in the five parcels (the 213 acres) is made liable under the decree for the Buckeye Loan Company debt only, and if that land segregated would rent for enough within the five years to satisfy the Buckeye debt, then the in-

terest of George M. could not be sold. Hence, it was absolutely necessary to determine from proper evidence the rental value of this land, independently of all other land." This contention overlooks entirely the deed of trust executed on this tract by the Ralphsnyders, in which ascertainment of rental value before sale was not required. The sale was made in conformity with the provisions of that instrument, and the Ralphsnyders will not be permitted now to assert a right against the sale which they parted with in the deed of trust. This ruling is in conformity with *Lewis, Hubbard & Co.* v. *Toney,* 76 W. Va. 80, 85 S. E. 30, which holds that the statutory provision requiring the court in creditors' suits to ascertain the rents and profits of real estate for five years does not apply to the enforcement of a deed of trust. The provision relates only to judgment liens. *Phipps* v. *Lopinsky,* 97 W. Va. 457, 125 S. E. 250. "A mortgagee does not lose any substantive rights by being compelled to enforce his trust lien in a pending judgment lien creditors' suit, and, where the lien of the former has priority the time and terms of the sale will ordinarily be determined by the provisions of the trust deed, not by rules applicable to the enforcement of judgment creditors' liens." *Abney, Barnes & Co.* v. *Coal Co., supra.*

Pending the commissioner's report, the Terra Alta Bank and A. G. Hughes, its trustee, filed petitions before him setting up a deed of trust on the Preston county land and were made defendants. No process was issued on the petitions and the bill was not amended to include the petitioners, and appellants say that this was error. Those petitions may be regarded simply as presenting a lien to the commissioner and process was unnecessary. *Dunfee* v. *Childs,* 45 W. Va. 155, 30 S. E. 102. Besides, the proceedings by and in favor of the two petitioners became nugatory, when the Preston county land was not sold.

The brief asserts as error that "neither the report shows, nor does the decree of sale adjudicate, that the lands mentioned are all the real estate owned by any of the Ralphsnyders." The order of the court directed the commissioner to show "all the real estate owned by the judgment debtors I. C. Ralphsnyder and W. M. Ralphsnyder." The commissioner reported in these words: "I. C. Ralphsnyder and W. M. Ralphsnyder

are the owners of the following described property, to-wit", sundry tracts of real estate then being listed. It will be presumed that he performed his duty as directed and that his report includes all the real estate owned by I. C. and W. M. See generally *Central Co.* v. *N. & W. Rr. Co.*, 44 W. Va. 286, 28 S. E. 926. Moreover, this point was raised on an exception to the report by the Ralphsnyders and in overruling the exception, the court said the exceptors ''are now in contempt of court, as this record shows, for failing to appear before the commissioner and disclose the real estate owned by them.'' I C. and W. M. were ill a large part of the time during the winter and spring of 1930, while the cause was before the commissioner. But there is no evidence that their illness continued after May of that year and the report was not closed until September 4, 1930. They offered no excuse for failing to appear after regaining their health, and of course cannot profit now through their own contumacy.

Mrs. Cora Ralphsnyder, the wife of G. M., was not made a party, though she joined her husband in executing the deed of trust on the 213 acres. After the sale, she petitioned for and was paid $597.22, as the value of her inchoate right of dower in the undivided one-third interest of G. M. in the 213 acres, as determined by the sale. It is contended that bidding was restrained because she was not a party and that her absence from the suit prior to the sale is not cured by her subsequent appearance. No proof supports the contention of repressed bidding and no inference arises that the bidders knew she was not a party. She was a proper, but not a necessary party. Hogg's Eq. Proc. sec. 37. She should have been impleaded prior to the sale, but she has acquiesced in the situation. In a suit of the magnitude and with the details and complications of this, inconsequential error is likely to occur. So, the sensible rule has been established, that, as a basis for reversal, a litigant must show error prejudicial to him. ''This proposition,'' said this court in *Bank* v. *Cain*, 107 W. Va. 309, 313, 148 S. E. 107, 109, ''is so elementary that citation of precedent and authority would serve no useful purpose and would only encumber the reports of our decisions.'' The lien indebtedness of I. C. and W. M., independent of delinquent taxes, is shown to be some $140,000. The total sum realized

on the sale of the several tracts of real estate was $31,055. Under the circumstances we cannot picture that Mrs. Ralphsnyder's presence (as a party) at a resale, would result in any material improvement in the position of the Ralphsnyders. So we hold that her omission as a party was not prejudicial error.

It is contended by the appellants that the 213 acres sold for a grossly inadequate price. No evidence of disinterested witnesses is offered. The contention is supported only by statements in the exceptions filed to the sale and by an affidavit of G. M., all of which assert that the tract is worth approximately $100,000. Opposed thereto are (1) the fact that though offered for sale three times, the highest offer was only $27,600; (2) the statement of the special commissioners that they believed it was the best price obtainable; and (3) the confirmation of the sale by the court. ''To justify the setting aside of a judicial sale, the evidence to support the motion must be strong and convincing, else it should be denied.'' *Abney, Barnes & Co.* v. *Coal Co.*, 89 W. Va. 504, 109 S. E. 616. The mere opinions of interested parties, without any guaranty of an advance on the sale, does not outweigh the findings of officials, who have made repeated efforts, as in this suit, to sell property. See generally the comments of this court on judicial sales in *McNabb* v. *Love,* 110 W. Va. 300, 302, 158 S. E. 167, and *Schmertz* v. *Hammond,* 51 W. Va. 408, 412-13, 41 S. E. 184. The exceptions filed to the sale say that the tract was not advertised as required by the decree of sale, but do not state in what particular the decree was not followed or that the advertisement was insufficient. See generally *Abney Barnes Co.* v. *Coal Co., supra.* After the initial advertisement of the sale for thirty days, there was no legal requirement that the subsequent sale be again advertised for thirty days. Immediately following the upset bid and without further notice, the court could have sold the property in open court. No prejudice from the latter sale after one day's publication is proven or to be inferred. ''The highest competitive bid at a public judicial sale, properly advertised and conducted is ordinarily accepted by courts as a fair criterion of the value of the property sold, in the absence of evidence to the contrary.'' *Blankenship* v. *Mongini,* 105 W. Va. 530, 143 S. E.

301. Consequently we cannot say that the sale price is inadequate.

The Lucille Company was not a party to the proceedings and there is no evidence of chilled bidding or of any unfairness, "peculiar relations", fraud or adventitious circumstance affecting the sale. Code 1923, chapter 132, section 8, provides: "If a sale of property be made under a decree or order of a court, and such sale be confirmed, though such decree or order be afterwards reversed or set aside, the title of the purchaser at such sale shall not be affected thereby; but there may be restitution of the proceeds of sale to those entitled." In compliance with this statute, we have held: "After confirmation of a judicial sale to one not a party to the proceedings, the sale will not be disturbed in the absence of fraud or other adventitious circumstance which does not go to the jurisdiction of the court." *Blankenship* v. *Mongini, supra.* Accord: *Eakin* v. *Eakin,* 83 W. Va. 512, 520, 98 S. E. 608; *Chapman* v. *Branch,* 72 W. Va. 54, 58, 78 S. E. 235, and cases cited.

The circuit court was informed on June 19, 1931, that the taxes on the 213 acres for 1930 amounting to $1,454.59 were unpaid, and thereupon (June 20th) ordered them paid by the special commissioners in the same decree which confirmed the sale. No objection was made at the time, and it is not contended now that the amount was incorrect, but that the payment was error. The purchase at a judicial sale is not concluded until the sale is confirmed, and prior to confirmation adjustments are ordinarily within the discretion of the court. See generally *Daniel* v. *Leitch,* 13 Gratt. 195, 212; *Eakin* v. *Eakin, supra,* 520, 98 S. E. 608. *Caveat emptor* is not applied to any great extent before confirmation. Rorer, Judicial Sales (2d Ed.), sec. 150; 35 C. J., subject Judicial Sales, sec. 119; *Young* v. *Smith,* 88 W. Va. 445, 450, 107 S. E. 110. In such a sale the court is the vendor and the purchaser has the right to expect from the court a title as free from liens as within the power of the court to confer. 16 R. C. L., subject Judicial Sales, sec. 86. The taxes for 1930 accrued while the land was still *in custodia legis,* and were ordered paid while the entire subject matter was still *in pectore judicis.* We are of opinion that this was a proper exercise of the court's discretion. See *Camden* v. *Haymond,* 9 W. Va. 680.

An attorney for plaintiff was allowed $150.00 out of the proceeds of the sales, for some special work done in the case, with the provision that no part thereof was to be charged to the one-third interest of G. M. in the 213 acres. That allowance was erroneous. See *Woods* v. *McClain*, 166 S. E. 279, decided by this court at this term. But I. C. and W. M. are not prejudiced, as the allowance was paid from funds due the creditors, who do not object.

Other errors are alleged in the petitions for appeal, which, not being mentioned in appellants' brief, are presumed to be abandoned.

The plaintiff below requests that our opinion show that the decree of sale was not entered at its instance or with its knowledge; and it assigns as cross-error that the circuit court did not recognize the right of its counsel to be appointed a sole or joint special commissioner to sell the property. The decree does not show that plaintiff asked for a recognition of this right. A request thereof and a refusal would be prerequisites of a claim of such error.

Accordingly, the decree directing the sale and the decree confirming it are both affirmed.

*Affirmed.*

On petition for rehearing.

The petition to rehear raises the question that the trustee in the deed of trust to the 213 acres—*a necessary party*—was not legally before the court. As this is a jurisdicitional question, it should, of course, be answered.

The bill in this cause was filed at November Rules, 1927. The Buckeye Savings and Loan Society and John Parks, trustee, were named as parties and the trust deed and the parties thereto were fully described in the bill. The Buckeye Society filed its answer at February Rules, 1928, alleging, among other things, that John Parks had departed this life. No action was taken on that allegation until June 10, 1929, when the Society filed a petition in open court asking that a trustee be substituted in place of Parks. Whereupon an order was entered on the petition, which recited that "all parties in interest are before the court", appointed Trevey Nutter

trustee in place of Parks, and substituted Nutter "to all the rights, powers, duties and responsibilities vested in the said John Parks", as trustee. "And thereupon", the order concludes, "the said Trevey Nutter, Trustee, so appointed appeared in open court as a party defendant in this suit and waived the issuing of process against him and service thereof upon him, and the maturing of this cause as to him". The bill was never amended to include the name of the substituted trustee. The cause had been referred to a commissioner in chancery in May, 1928, who had filed his report on March 4, 1929. But the cause was referred to the commissioner on October 15, 1929, and it was upon his subsequent report filed in September, 1930, that sale of the property was made in 1931. So the substituted trustee was before the court while the real merits of the cause were being adjudicatd.

We are aware that an earlier decision of this court asserted broadly that "one is not a party unless named in the bill" (*Cook* v. *Dorsey*, 38 W. Va. 196, 198, 18 S. E. 468, 469), and that technical precision required that the bill be amended to show the substitution of Nutter for Parks. Hogg, Eq. Pro. (Carlin's Ed.), sec. 98. In *Freeman* v. *Egnor*, 72 W. Va. 830, 79 S. E. 824, and like cases cited by petitioners, there was no allegation in the bill relating in any way to the new party, and he sought to introduce a new issue. Here the bill contains an allegation describing fully the trusteeship itself and bringing both the equitable and the legal titles into court. Here the new party introduced no new issue, but simply took another man's place. And thence forward he acted as a party and was recognized by the court and by the litigants as such, without objection. To hold now that the substituted trustee was not properly before the court, merely because the substitution was not set out in an amendment to the bill (though contained in a decree of the court) would be to sacrifice needlessly substance to form—a ruling we are unwilling to make. In Virginia, the practice was long ago relaxed to the extent that an omitted party can be convened without formal amendment to the bill; and where he then "litigates his rights, he is bound by the decree in the cause determining those rights". *Epperson* v. *Epperson*, 108 Va. 471, 474, 62 S. E. 344.

The petition to rehear further claims that the substitution was not legal because made without the notice (10 days) required by Code 1923, ch. 132, sec. 5. The notice was not requisite since all the parties in interest were before the court, and raised no objection to the substitution being made then.